E. Jeffrey Banchero (SBN 93077)
ejb@bancherolaw.com
BANCHERO LAW FIRM LLP
601 California Street, 13th Floor
San Francisco, California 94111
Telephone: (415) 398-7000
Facsimile: (415) 484-7029

Attorneys for Plaintiff
ANTHONY C. LUSTIG

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

# OAKLAND DIVISION

| | |
|---|---|
| ANTHONY C. LUSTIG,<br><br>Plaintiff,<br><br>v.<br><br>AZGEN SCIENTIFIC HOLDINGS PLC,<br><br>Defendant. | **CASE NO. 18-cv-07503-HSG**<br><br>**FIRST AMENDED COMPLAINT**<br><br>**Breach of Contract, Nonpayment of Wages and Other Compensation, and Waiting Time Penalties**<br><br><u>**DEMAND FOR JURY TRIAL**</u> |

Plaintiff, Anthony C. Lustig ("Lustig"), alleges:

## NATURE OF THE ACTION

1.     This is an action to recover due and unpaid wages, or salary in the amount of $70,563 and the value of shares of stock that the defendant, AzGen Scientific Holdings Plc ("AzGen" or the "company"), issued to Lustig as part of his compensation.  Lustig earned the salary and the stock while serving as AzGen's Chief Investment Officer.  Lustig is also suing to recover a $100,000 bonus and out-of-pocket, pre-approved travel expenses in an amount that exceeds $7,000, which AzGen also refuses to pay.  Lustig asserts causes of action for breach of contract, nonpayment of wages and other compensation, and waiting time penalties under California Labor Code §203(a).

-1-
FIRST AMENDED COMPLAINT – 18-CV-07503-HSG

## PARTIES

2. Plaintiff Lustig is an individual who resides in San Jose, California.

3. Defendant AzGen is a corporation organized under the laws of Ireland, with its principal place of business in Dublin, Ireland.

## JURISDICTION

4. The Court has jurisdiction over this action pursuant to 28 U.S.C. §1332, because the matter in controversy exceeds $75,000 exclusive of interest and costs, and plaintiff is a citizen of the State of California, and defendant is a citizen of a foreign state.

## VENUE

5. Venue lies within this district pursuant to 28 U.S.C. §1391(b)(2) and (3), because a substantial part of the events or omissions giving rise to the claims occurred in this district and, alternatively, because defendant is subject to the Court's personal jurisdiction with respect to this action.

## INTRADISTRICT ASSIGNMENT

6. On December 26, 2018, this Court issued an order assigning the case to the Honorable Haywood S. Gilliam, Jr., in the Oakland division.

## FACTUAL ALLEGATIONS

7. AzGen is an investment company. The company seeks to identify and invest in so-called disruptive technologies in life sciences, material sciences, and other emerging technologies, such as crypto-currencies, virtual reality, data security, and artificial intelligence. AzGen has spheres of influence in North America, Europe, and Asia, and is building a network of global banks and sovereign wealth funds. In its first two years of business, AzGen created over $150 million in valuation increase, representing a 500% rate of return to AzGen's shareholders.

8. AzGen hired Lustig in August, 2017 to serve as its Chief Investment Officer. The position was based in the San Francisco, California area. AzGen's offer letter stated that Lustig's annual salary would be $250,000.

9. In December, 2017, AzGen and Lustig entered into a written employment agreement, which provides that he would continue to serve as the company's Chief Investment

Officer and continue to report to the CEO.  The employment agreement is attached as Exhibit A, and incorporated by this reference as if set forth in full herein.  The agreement provides for a salary of $1,000 a day, which AzGen agreed to pay on a monthly basis.  It provides that AzGen will promptly reimburse Lustig for approved travel expenses.  It provides that Lustig is entitled to earn an annual minimum potential bonus of $100,000 based on completion of defined milestones.

10. The employment agreement (Exhibit A) also provides that the Board of Directors approved an allotment for Lustig of "4,000,000 ordinary shares . . . in the capital of [AzGen] for a relatively nominal consideration of €4,000," and that this amount of shares would be transferred to him "in a single tranche"—*i.e.*, without a requirement that the shares vest over time.  The allotment of these shares is memorialized in the company's board minutes.  Lustig paid a subscription price for the shares.

11. The employment agreement provides, further, that if Lustig's relationship with AzGen or its affiliates ends, he is required to sell the 4,000,000 shares back to the company.  According to the agreement, if Lustig leaves the company of his own volition or AzGen terminates his employment agreement other than for "Improper Behavior," the company is obligated to pay Lustig market value for a percentage of the shares, calculated as follows:  the number of months Lustig was employed by AzGen divided by 36 months, multiplied by 4,000,000 shares.  The contract defines this amount of shares as "Value Shares."  The balance of the shares—*i.e*, shares other than Value Shares— are to be retransferred from Lustig to AzGen not at market value, but at the subscription price.

12. AzGen employed Lustig during the period from August 1, 2017, to July 12, 2018.  Under the terms of the employment agreement, AzGen is obligated to pay Lustig the market value for 1,333,333.33 shares (12 months / 36 months times 4,000,000 shares).  AzGen is obligated to pay Lustig the subscription price for the balance of the 4,000,000 shares—*i.e*., for 2,666,666.67 shares.

13. AzGen paid Lustig a monthly salary that amounted to $250,000 annually—$20,833 a month.  Beginning in April, 2018, however, AzGen stopped paying Lustig.  At this time, AzGen also refused to reimburse Lustig for approved travel expenses.

14. During April – May, 2018, Lustig sent e-mail messages to AzGen's CEO, Paul Gray, demanding payment for his salary and reimbursement for the travel expenses. Despite these demands, AzGen did not pay Lustig the salary he was owed or reimburse him for approved travel expenses. Neither Gray nor any other AzGen officer explained why AzGen was refusing to make these payments.

15. On June 12, 2018, AzGen's attorneys sent Lustig a letter terminating his employment agreement, effective July 12, 2018.

16. The lawyer's letter states, "As you have acted in bad faith and/or failed to disclose a conflict of interest in your dealings with CEEK VR," AzGen "regards this as an Improper Behavior Termination for the purposes of Clause 4 of the contract," which relates to the retransfer of Lustig's shares of stock. According to the letter, Lustig was now obligated to retransfer to AzGen's control all of the 4,000,000 shares that he had earned, not for market value, but for the subscription price. The letter concludes that AzGen would make no further payments to Lustig.

17. At no time prior to June 12, 2018, when Lustig received the lawyer's letter terminating his employment, did AzGen inform him that the company considered any of his actions to have been improper or in bad faith. Nor did AzGen inform Lustig prior to June 12, 2018, that the company believed Lustig had failed to disclose a conflict of interest with respect to CEEK VR.

18. There is no truth to the allegation that Lustig acted in bad faith or failed to disclose a conflict of interest in his dealings with CEEK VR. CEEK VR is a company AzGen invested in. AzGen entered into an agreement with CEEK VR, in which the two companies agreed to create an LLC to provide referral and consulting services for the financing, marketing, and sale of CEEK products. Under the LLC's operating agreement, Lustig and AzGen's CEO, Paul Gray, were appointed as two members of a three-person board of directors to manage the LLC. To the extent Lustig worked with CEEK VR, he did so at Paul Gray's direction, and with his knowledge. The grounds for termination set forth in the AzGen's lawyer's letter are wholly pretextual.

# FIRST CAUSE OF ACTION

## (Breach of Contract)

19. Plaintiff repeats and realleges each of the allegations in paragraphs 1 through 18 as if set forth at length herein.

20. Lustig performed each of the conditions set forth in the employment agreement (Exhibit A) between him and AzGen, including (a) serving AzGen as its Chief Investment Officer; (b) making a subscription payment for the 4,000,000 shares of stock; and (c) submitting itemized services to AzGen's CEO and Board with each monthly invoice.

21. AzGen breached the employment agreement by failing and refusing to pay Lustig's salary for April and May, 2018, in the amount of $41,666; by failing and refusing to pay Lustig's salary for the period from June 1 to July 12, 2018, in the amount of $28,897; by failing and refusing to reimburse Lustig for his approved travel expenses, in an amount in excess of $7,000; by failing and refusing to pay Lustig a bonus of at least $100,000, or a bonus of any kind; by failing and refusing to pay Lustig the market value for his Value Shares (¶¶ 1, 2, & 5 of Exhibit A); and by failing and refusing to pay Lustig the subscription price for the balance of his 4,000,000 shares.

22. AzGen's breach of the employment agreement has caused Lustig to suffer damages. These damages include (a) due, and unpaid wages, or salary of $70,563; (b) an amount in excess of $7,000 in approved travel expenses; (c) a bonus in the amount of $100,000; (d) the market value of Lustig's Value Shares, in an amount to be proven at trial; (e) reimbursement of the subscription price for the balance of Lustig's shares; and (f) pre-judgment interest on these amounts.

23. Pursuant to Calif. Labor Code §218.5, Lustig requests that the Court award him reasonable attorneys' fees and costs incurred in bringing this cause of action for breach of a contractual obligation to pay wages.

# SECOND CAUSE OF ACTION
## (Nonpayment of Wages and Other Compensation; Violation of California Labor Code §201(a))

24. Plaintiff repeats and realleges each of the allegations in paragraphs 1 through 18 as if set forth at length herein.

25. Under Calif. Labor Code §201(a), when an employer discharges an employee, wages and other compensation earned and unpaid at the time of discharge are due and payable immediately.

26. As of June 12, 2018, the date that AzGen provided Lustig with 30-days' notice that his employment would terminate, AzGen owed Lustig wages, or salary for two months' and twelve days' work—$49,730. On July 12, 2018, following the expiration of the thirty-days' notice period, an additional 30 days' salary had accrued—*i.e.*, $20,833. AzGen has also refused and failed to pay Lustig a salary for this 30-day period.

27. In addition, upon discharge, AzGen owed Lustig a bonus in the amount of at least $100,000, and an amount equal to the market value of Lustig's Value Shares and the subscription price for the balance of his 4,000,000 shares.

28. There is now due and owing to Lustig the sum of $70,563 in due and unpaid salary; a bonus of at least $100,000; an amount equal to the market value of his Value Shares and the subscription price for the balance of his 4,000,000 shares; and pre-judgment interest on these amounts.

29. Pursuant to Calif. Labor Code §218.5, Lustig requests that the Court award Lustig reasonable attorneys' fees and costs incurred in bringing this cause of action for non-payment of wages and other compensation.

### THIRD CAUSE OF ACTION

**(Waiting Time Penalties Under California Labor Code §203(a))**

30. Plaintiff repeats and realleges each of the allegations in paragraphs 1 through 18 as if set forth at length herein.

31. Under Calif. Labor Code §203(a), if an employer willfully fails to pay wages to an employee who is discharged, the wages of the employee continue as a penalty from the date the wages are due at the same rate until paid, for a period not to exceed 30 days.

32. Lustig's last day of employment with AzGen was July 12, 2018. AzGen did not pay Lustig's unpaid wages on that date, or on any subsequent date. These unpaid wages are still owing.

Because AzGen's failure to pay Lustig's wages was willful, AzGen is liable for a penalty equal to 30 days' wages—*i.e.,* $20,833.

## PRAYER FOR RELIEF

WHEREFORE, plaintiff, Anthony C. Lustig, prays for relief against defendant, AzGen Scientific Holdings Plc, as follows:

    a.    For compensatory and general damages according to proof;

    b.    For a penalty under Calif. Labor Code §203(a), according to proof;

    c.    For reasonable attorneys' fees and costs, pursuant to Calif. Labor Code §218.5;

    d.    For costs of suit herein; and

    e.    For such other and further relief as the Court may deem just and proper.

Respectfully Submitted,

BANCHERO LAW FIRM LLP

By: /s/
E. Jeffrey Banchero

Attorneys for Plaintiff
Anthony C. Lustig

## JURY DEMAND

Plaintiff, Anthony C. Lustig, demands a jury trial on all issues triable by jury.

BANCHERO LAW FIRM LLP

By: /s/
E. Jeffrey Banchero

Attorneys for Plaintiff
Anthony C. Lustig