UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANTHONY C. LUSTIG,<br><br>    Plaintiff,<br><br>v.<br><br>AZGEN SCIENTIFIC HOLDINGS PLC,<br><br>    Defendant. | Case No. 18-cv-07503-HSG<br><br>**ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR DEFAULT JUDGMENT**<br><br>Re: Dkt. No. 47, 48 |

Plaintiff Anthony Lustig ("Lustig") filed a motion ("Motion") for entry of default judgment against Defendant AzGen Scientific Holdings PLC ("AzGen"), Dkt. No. 47.  Paul Gray and Luis Siemens, directors of AzGen, filed a purported opposition "pro se."[1]  ("Opp.," Dkt. No. 53).  The Court held a hearing on the motion on January 9, 2020.  Dkt. No. 54.  On January 16, 2020, Plaintiff filed a supplemental memorandum in support of the Motion, as requested by the Court.  ("Supp. Mot.," Dkt. No. 55).  Gray and Siemens filed a response to that supplemental memorandum, again purporting to act in a pro se capacity.  ("Supp. Reply," Dkt. No. 57).  For the reasons set forth below, the Court **GRANTS** in part and **DENIES** in part the Motion.

I.    BACKGROUND

    A.    **Procedural Background**

Plaintiff Lustig filed this action on December 13, 2018, alleging that AzGen breached its employment contract with Plaintiff by failing to pay certain compensation, including an AzGen stock award.  AzGen, founded by Paul Gray, is a company that invests in life sciences and other

---

[1] The Court cannot consider corporate pro se pleadings, since these officers were not sued and a corporation "may appear in the federal courts only through licensed counsel."  *Rowland v. California Men's Colony, Unit II Men's Advisory Council*, 506 U.S. 194, 202 (1993).

emerging technologies in North America, Europe, and Asia.  First Amended Complaint ¶ 7 (Dkt. No. 11, "AC"); Declaration of Anthony C. Lustig (Dkt. No. 47-2, "Lustig Decl.") ¶ 4.  AzGen is a corporation organized under the laws of Ireland, with its principal place of business in Dublin.  AC ¶ 3.  At the outset of this litigation, AzGen retained the law firm Duane Morris LLP ("Duane Morris"), and Duane Morris partner James S. Brown executed a Waiver of Service of Summons.  Dkt. No. 12.  The form provides that AzGen waives "any objections to the absence of a summons or of service."  *Id*.  Duane Morris represented AzGen until March 22, 2019, when the Court allowed Duane Morris to withdraw due to AzGen's failure to pay and insolvency issues.  Dkt. No 15 at 3; Dkt. No. 26.

Upon AzGen being unable (or unwilling) to obtain new counsel, the Court allowed Plaintiff to seek entry of default, and the clerk entered default on April 24, 2019.  Dkt. No. 34.  Duane Morris then notified the Court on June 12, 2019 of its inability to comply with the Court's order to electronically forward documents to AzGen because emails to the email addresses counsel could identify were bouncing back as undeliverable.  Dkt. No. 36.  The Court held a telephonic case management conference on July 24, 2019, and relieved Duane Morris of its obligation to serve AzGen.  Dkt. No. 42.

### B.   Plaintiff's Employment with AzGen

AzGen hired Plaintiff in August 2017 to serve as its Chief Investment Officer.  AC ¶ 8.  The parties entered into a revised employment agreement on December 29, 2017, which set forth the conditions of Plaintiff's employment.  *Id*., Ex. A ("Agreement").  According to the Agreement, Plaintiff would be based in San Francisco, receive a daily rate of $1,000 per day worked ($250,000 yearly), be promptly reimbursed for approved travel expenses upon submission of receipts, be issued four million shares with a time dependent "Value Share" component, and receive an annual minimum potential bonus of $100,000 "based on the completion of defined milestones."  *Id*. at 5.[2]  AzGen's board of directors approved the allotment for "4,000,000 ordinary shares … in the capital of [AzGen] for a relatively nominal consideration of €4,000."  AC ¶ 10.

---

[2] The page references to the Agreement refer to the ECF page numbers.

These shares were transferred to Lustig "in a single tranche" and without a requirement that the shares vest over time. *Id*. The 4,000,000 shares represented "10% of the issued share capital" of AzGen. Lustig Decl. ¶ 3, Ex. D. The Agreement also provided that the company may "terminate your consulting engagement on giving you not less than one months' notice." *Id*. This was subject to the following conditions: (1) if Plaintiff's relationship with the company ended, the shares would come back to the company's control, and "[d]epending on when or in what circumstances this may come to pass, different price considerations would apply"; (2) if Plaintiff left before 3 years of service starting from August 1, 2017, Plaintiff would receive only the market value for a portion of the shares ("Value Shares") and the subscription price for the remainder; (3) the market value would be determined by a panel of three independent experts; (4) if Plaintiff was terminated by the Board by "reason of any fraud, dishonesty, gross negligence, willful misconduct, bad faith or failure to disclose a conflict of interest," then Plaintiff had to retransfer all the shares in exchange for the subscription price; and (5) if Plaintiff was terminated by the company for any other reason other than improper behavior or a change in control, Plaintiff was obligated to retransfer all or some of the shares in exchange for a price "equal to their then 'Market Value.'" *Id*. at 3. The number of "value shares" was to be determined by the number of months Plaintiff worked divided by 36, then multiplied by the four million shares. *Id*.

On June 12, 2018, Defendant sent Plaintiff a letter terminating the Agreement, effective July 12, 2018. AC ¶ 15. The letter stated that Plaintiff acted in "bad faith and/or failed to disclose a conflict of interest in [his] dealings with CEEK VR," and that Defendant "regards this as an Improper Behavior" for purposes of Plaintiff's interest in the stock. *Id*. ¶ 16. According to the letter, Plaintiff was obligated to retransfer control of the 4,000,000 shares in exchange for the subscription price and not the market value. *Id*. Plaintiff alleges that there "is no truth to the allegation that Lustig acted in bad faith or failed to disclose a conflict of interest." *Id*. ¶ 18.

The AC alleges that AzGen breached the Agreement by failing to pay the following: (1) monthly salary from April 2018 through July 12, 2018 ($70,563), *id*. ¶ 21; (2) travel reimbursements in excess of $7,000, *id*. ¶ 22; (3) bonus in the amount of $100,000, *id*.; and (4) market value for 1,333,333.33 shares and subscription price for 2,666,666.67 shares, *id*. ¶ 12.

1  Based on the allegations of the complaint, Plaintiff brings breach of contract and California Labor
2  Code claims. *Id*. ¶¶ 19–32.

## II. LEGAL STANDARD

When a party has failed to plead or defend against a complaint, the clerk "must enter the party's default." Fed. R. Civ. P. 55(a). Following an entry of default, the Court may enter a default judgment upon request. Fed. R. Civ. P. 55(b)(2). However, the Court's decision to enter a default judgment is "discretionary." *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980). When default has been entered, the "factual allegations of the complaint, except those relating to the amount of damages, will be taken as true." *TeleVideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917–18 (9th Cir. 1987). In assessing a request for default judgment, the Court has an "affirmative duty" to examine its jurisdiction over "both the subject matter and the parties." *In re Tuli*, 172 F.3d 707, 712 (9th Cir. 1999). The Court must also determine whether service of process on the Defendant was proper. *Craigslist, Inc. v. Naturemarket, Inc.*, 694 F. Supp. 2d 1039, 1054 (N.D. Cal. 2010); *cf. Mason v. Genisco Tech. Corp.*, 960 F.2d 849, 851 (9th Cir. 1992) (holding default judgment invalid due to improper service, even where defendant had actual notice of the action).

Upon determination of jurisdiction, the Court then evaluates the merits of the default judgment request based on seven factors (the "*Eitel* factors"): (1) the possibility of prejudice to Plaintiff; (2) the merits of Plaintiff's substantive claim; (3) the sufficiency of the complaint; (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect; and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits. *See Eitel v. McCool*, 782 F.2d 1470, 1471–72 (9th Cir. 1986).

## III. DISCUSSION

### A. Jurisdiction and Service of Process

In considering an entry of default judgment, a district court has an "affirmative duty" to examine its jurisdiction over "both the subject matter and the parties." *In re Tuli*, 172 F.3d at 712. A court must also assess whether there was proper service of process on the defendant. *Craigslist, Inc. v. Naturemarket, Inc.*, 694 F. Supp. 2d 1039, 1054 (N.D. Cal. 2010).

4

### i. **Personal Jurisdiction**[3]

Plaintiff contends that the Court has specific jurisdiction over AzGen. Mot. at 7. In determining whether specific jurisdiction exists for contract claims, the Ninth Circuit applies a three-part test: "1) the nonresident defendant must have purposefully availed himself of the privilege of conducting activities in the forum by some affirmative act or conduct; 2) plaintiff's claim must arise out of or result from the defendant's forum-related activities; and 3) exercise of jurisdiction must be reasonable." *Roth v. Garcia Marquez*, 942 F.2d 617, 620-621 (9th Cir. 1991) (citations omitted).

The Court is satisfied that it has specific personal jurisdiction over Defendant. Plaintiff contends that the parties agreed that the jurisdiction of his employment Agreement would be California, Lustig Decl. ¶ 5; his role was based in California, *id*. ¶ 9; Plaintiff was involved in negotiations which involved investments in two California-based companies, *id*. ¶ 10; Mr. Siemens (a director of AzGen) flew to California in connection with these investments and met with Plaintiff on several occasions, *id*. ¶ 10; and Plaintiff met with Mr. Gray (another director of AzGen) in California, *id*. ¶ 11. These contacts satisfy the *Roth* test, as they reflect purposeful availment of the privileges of conducting activities in California, the alleged misconduct arose out of activities related to Plaintiff's employment in California, and the exercise of personal jurisdiction is reasonable. *Burger King v. Rudzewicz*, 471 U.S. 462, 473 (1985) (parties who "reach out beyond one state and create continuing relationships and obligations with citizens of another state are subject to regulation and sanctions in the other state for the consequences of their activities.").

### ii. **Service of Process**

"Service of process is the *mechanism* by which the court [actually] acquires" the power to enforce a judgment against the defendant's person or property. In other words, service of process is the means by which a court asserts its jurisdiction over the person." *S.E.C. v. Ross*, 504 F.3d

---

[3] Plaintiff alleges that the Court has subject matter jurisdiction over the action based on diversity jurisdiction. Mot. at 6. Plaintiff is a citizen of California, and Defendant is a company organized under the laws of Ireland with its principal place of business in Ireland. The amount in controversy exceeds $75,000. The Court is satisfied that it has subject matter over this action based on diversity of citizenship under 28 U.S.C. § 1332.

5

1130, 1138 (9th Cir. 2007) (citation and quotations omitted) (emphasis in original). Without proper service, the Court "has no power to render any judgment against the defendant's person or property unless the defendant has consented to jurisdiction or waived the lack of process." *Id.* at 1138–39. Under Federal Rule of Civil Procedure 55(b)(2), "[i]f the party against whom a default judgment is sought has appeared personally or by a representative, that party or its representative must be served with written notice of the application at least 7 days before the hearing." Fed. R. Civ. P. 55(b)(2). "The failure to provide 55(b)(2) notice, if the notice is required, is a serious procedural irregularity that usually justifies setting aside a default judgment or reversing for the failure to do so." *Wilson v. Moore & Assocs., Inc.*, 564 F.2d 366, 369 (9th Cir. 1977) (citations omitted). "Although written notice is contemplated, it need not necessarily be in any particular form." *Id*. "'The major consideration is that the party is made aware that a default judgment may be entered against him.'" *Id*. (quoting 10 C. Wright & A. Miller, Federal Practice and Procedure § 2687).

The Ninth Circuit has held the key inquiry is whether "the party in default has thereby demonstrated a clear purpose to defend the suit." *In re Roxford Foods, Inc.*, 12 F.3d 875, 879 (9th Cir. 1993). Under that approach, "informal contacts" between the parties have also sufficed in some situations. *Id*. In *H. F. Livermore Corp. v. Aktiengesellschaft Gebruder Loepfe*, 432 F.2d 689 (D.C. Cir. 1970), the "benchmark case in respect to Rule 55(b)(2)," *see Wilson*, 564 F.2d at 369, the parties engaged in written and oral settlement discussions for days before plaintiff filed a motion for default. *Livermore*, 432 F.2d at 691–92. The *Livermore* court held that the defendant's attempts to achieve a settlement "demonstrated a clear purpose to defend the suit," and these discussions were sufficient to find that the defendant "appeared" in the action for purposes of Rule 55(b)(2). *Id*.

At the January 9, 2020 hearing, the Court requested supplemental briefing as to whether Rule 55(b)(2) notice is required under *Roxford*. Plaintiff contends that Rule 55(b)(2) does not require service of the Motion because AzGen has not appeared or demonstrated a clear purpose to defend Lustig's claims. Supp. Mot. at 2. In *Roxford*, the Ninth Circuit held that an appearance requiring Rule 55(b)(2) notice "'need not necessarily be a formal one,'" and that an appearance

6

may be "'one involving a submission or presentation to the court." 12 F.3d at 879 (quoting *Wilson*, 564 F.2d at 369). The Ninth Circuit found that "up to the time that [plaintiffs] filed for entry of default, they were aware that the [defendant] was attempting to procure counsel," and that once defendant did retain counsel, "no notice concerning the [] proceeding was ever sent to the [defendant] or his counsel." *Id.*; *see also id.* at 881 ("Several hearings were set in the underlying bankruptcy proceeding during the period from May to October of 1990, but were continued for the express purpose of allowing the [defendant] to obtain counsel.").

Similarly, in *Wilson*, the Ninth Circuit affirmed that Rule 55(b)(2) notice is not required where there was "no clear purpose" by defendant to defend the action after its representative wrote a letter to the district court objecting to the complaint, but did not hire an attorney to make an appearance. 564 F.2d at 367. In response, plaintiff's counsel suggested that the representative "retain an attorney to represent [his] interests," because the defendant "will be in default if it does not file a timely answer to the Complaint and Summons." *Id*. The Ninth Circuit found this warning sufficient to support default judgment without further notice to defendant. *Id*. at 368.

Plaintiff contends that AzGen has not demonstrated a clear purpose to defend this action, and the Court agrees. AzGen was represented by counsel until its attorneys withdrew, after which time AzGen decided not to hire new counsel. AzGen undoubtedly received actual notice of the summons and complaint, Dkt. No. 5, and AzGen's prior counsel signed the form on behalf of AzGen waiving service and acknowledging that if AzGen failed to file an answer or Rule 12 motion, a "default judgment will be entered against me or the entity I represent." Dkt. No. 12; Dkt. No. 47-1, Declaration of Jeffrey Banchero ("Banchero Decl."), Ex. H. Further, in granting Duane Morris's motion to withdraw, the Court directed AzGen "to obtain new counsel within 30 days of this Order," or else the Court would "be inclined to allow Plaintiff's counsel to seek entry of a default and a default judgment." Dkt. No. 26 at 3 (citing *Emp. Painters' Trust v. Ethan Enters., Inc.*, 480 F.3d 993, 998 (9th Cir. 2007) (affirming entry of a default judgment where the corporate defendant had failed to obtain substitute counsel); *see also U.S. v. High Country Broad. Co., Inc.*, 3 F.3d 1244, 1245 (9th Cir. 1993) (same)). The Court directed Duane Morris "to accept service of papers for forwarding to AzGen" "during this period" "unless and until AzGen appears

7

by other counsel" *Id*. (citing Civil L.R. 11-5(b);

Although AzGen had its lawyers in Ireland send a letter to Plaintiff stating that AzGen "instructed its California attorneys to challenge any proceedings that are brought on [Plaintiff's] behalf in the California courts on the grounds of lack of jurisdiction and *forum non conveniens*," Banchero Decl., Ex. I, AzGen never did so, through either the original lawyers or newly-retained lawyers. None of these facts suggests "informal contacts between the parties" demonstrating a "clear purpose" on AzGen's behalf to make an appearance and defend plaintiff's claims. *Roxford*, 12 F.3d at 879. All told, Defendant received a number of warnings about the consequences of not filing an answer or otherwise responding, and the Court is satisfied that those notifications, combined with AzGen's refusal to obtain new counsel, constitute grounds to authorize default judgment without Rule 55(b)(2) notice. *See, e.g.*, *Franchise Holding II, LLC v. Huntington Restaurants Group, Inc.*, 375 F.3d 922, 926 (9th Cir. 2004) (affirming district court's refusal to vacate default judgment where defendant was "on notice" that plaintiff "would pursue litigation" and "nevertheless failed to file anything with the district court" until after defendant began collecting on judgment); *Direct Mail Specialists, Inc. v. Eclat Computerized Technologies, Inc.*, 840 F.2d 685, 689-690 (9th Cir. 1988) (affirming district court's refusal to vacate default judgment where defendant, during settlement discussions, said he would refer matter to attorney but failed to appear, and defendant had "actual notice of the summons and complaint" and "presumably was well aware of the dangers of ignoring service of process").

In any event, even if the Court were to find that Defendant did appear, Plaintiff sufficiently completed service under Rule 5 of the Federal Rules of Civil Procedure by sending a copy of these motion papers to AzGen's last known corporate address in Ireland, and to its corporate Secretary. Banchero Decl. ¶ 14. The requirements of Rule 4 were satisfied when AzGen waived service of process. *See Brockmeyer v. May*, 282 F.3d 798, 807 (9th Cir. 2004) ("Waiver of service under Rule 4(d) is valid for both domestic and foreign defendants."). Rule 5—and Rule 55(b)(2)—only require service of the Motion by mailing to AzGen's last known address, and do not have the same notice requirements as Rule 4. *See Trade Well International v. United Central Bank*, 825 F.3d 854, 860 (7th Cir. 2016) (differentiating between Rule 4 service under the Hague Convention, and

8

Rule 5(b)(2)(C) service of default judgment, which is sufficient upon mailing to the last known address); *In re Advance Watch*, 587 B.R. 598, 604-05 (Bankr. S.D.N.Y. 2018) ("Rule 5 does not distinguish between domestic and foreign defendants, such that Rule 5(b) also applies to service of judicial documents other than the summons and complaint to foreign defendants … Accordingly, service of the [motion for default judgment] on [foreign corporation] is adequate if those documents are mailed to [foreign corporation's] last known address.").

On November 25, 2019—ten days after Lustig served the motion for entry of default judgment by mailing the pleading to AzGen's address in Ireland—Paul Gray and Luis Siemens, founding shareholders and officers of AzGen, filed a document with the Court entitled "Praecipe/Notice of Filing and Relief Request." Dkt. No. 52. Four days later, on November 29, Gray and Siemens also filed a document entitled "Opposition to Plaintiff's Motion for Default Judgment." Dkt. No. 53. While these individuals cannot act "pro se" to represent AzGen in this case as a matter of law, the filings further suggest that the company received actual notice of the Motion, which is the primary consideration regarding the entry of default judgment. *See, e.g.*, *Meadows v. Dominican Republic*, 817 F.2d 517, 521 (9th Cir. 1987) (affirming denial of motion to vacate default judgment because defendant received "actual or constructive notice of the filing of the action and failed to answer"); C. Wright, A. Miller & M. Kane, Federal Practice and Procedure § 2687 (2016) ("Notice of an application for the entry of a default judgment need not be in any particular form. The major consideration is that the party is made aware that a default judgment may be entered against him"). Accordingly, the Court is satisfied that if notice was required, that requirement was sufficiently met by mailing the Motion to AzGen's last known address.

**B.    The *Eitel* Factors**

Once the Court finds that notice was sufficient, the Court must then evaluate the merits of the default judgment request based on the seven *Eitel* factors. *See Eitel*, 782 F.2d at 1471–72.

i.    **Possibility of Prejudice to Plaintiff**

First, the Court must consider the possibility of prejudice to Plaintiff. *Id.* at 1471. A plaintiff may be prejudiced when, in the absence of a default judgment, plaintiff would be left with no "other recourse for recovery." *PepsiCo, Inc. v. Cal. Sec. Cans*, 238 F. Supp. 2d 1172, 1177

1  (C.D. Cal. 2002).  Courts have found prejudice when a defendant has failed to appear or defend

2  against a suit, and plaintiff could not otherwise seek relief.  *See, e.g.*, *id.*; *Fulton v. Bank of Am.,*

3  *N.A.*, No. 2:16-cv-04870, 2016 WL 7156440, at *3 (C.D. Cal. Dec. 6, 2016).

4        Lustig has no other reasonable or effective remedy to obtain his salary or payment for

5  stock.  Lustig resides in California, and contends that he does not have the resources to bring an

6  action against AzGen in Ireland.  Lustig Decl. ¶ 21.  Because Defendant has failed to defend

7  against this suit, Plaintiff would be prejudiced absent a default judgment because it would have no

8  "other recourse for recovery."  *See PepsiCo.*, 238 F. Supp. 2d at 1177.

9        ii.   **Merits of Plaintiff's Substantive Claim and Sufficiency of the Complaint**

10        The second and third *Eitel* factors consider the merits and sufficiency of Plaintiff's claims.

11  These two factors are often analyzed together, and require courts to consider whether a plaintiff

12  has "state[d] a claim on which [it] may recover." *Id.* at 1175.  With the exception of facts relating

13  to damages, courts must take as true all other factual allegations pled in the complaint. *TeleVideo*

14  *Sys., Inc.*, 826 F.2d at 917–18.  Of all the *Eitel* factors, courts often consider the second and third

15  factors to be "the most important." *Sanrio, Inc. v. Jay Yoon*, No. 5:10-CV-05930 EJD, 2012 WL

16  610451, at *4 (N.D. Cal. Feb. 24, 2012); *see also Fulton*, 2016 WL 7156440, at *5.  Plaintiff

17  brings the following three claims against Defendant: (1) breach of contract; (2) nonpayment of

18  wages and other compensation in violation of California Labor Code Section 201(a); and (3)

19  waiting time penalties under California Labor Code Section 203(a).

20        a.   <u>Breach of Contract (First Cause of Action)</u>

21        Lustig has alleged facts sufficient to establish breach of contract.  Under California law,

22  the elements of breach of contract are: "(1) existence of the contract; (2) plaintiff's performance or

23  excuse for nonperformance; (3) defendant's breach; and (4) damages to plaintiff as a result of the

24  breach." *CDF Firefighters v. Maldonado,* 158 Cal. App. 4th 1226, 1239 (2008).  Plaintiff alleged

25  facts demonstrating that he performed under the Agreement, AC ¶ 20; Defendant breached the

26  agreement by not paying his salary and reimbursing his expenses from April through May 2018,

27  *id.* ¶¶ 13–14, 21; and Plaintiff suffered resulting damages, *id.* ¶ 22.

28        The parties entered into the employment Agreement dated December 29, 2017. *Id.* ¶ 9.

United States District Court
Northern District of California

1  Lustig performed his obligations under the Agreement, serving as AzGen's Chief Investment
2  Officer, submitting itemized invoices to AzGen for payment, and making the subscription
3  payment for his shares of AzGen stock. *Id*. ¶ 20.  AzGen breached the contract by refusing to pay
4  Lustig's salary for the period from April 1 to July 12, 2018—the last day of the thirty-day notice
5  period provided for in his employment agreement. *Id*. ¶ 21.  Lustig's annual salary was $250,000
6  a year, and three months and 12 days of salary amounts to $70,563. *Id*. ¶ 22.  AzGen also agreed
7  to reimburse him for pre-approved travel expenses ($8,638.72, Lustig Decl. ¶14); pay him a
8  $100,000 bonus (AC ¶ 22); and pay him the value of his shares of AzGen stock. *Id*.

Regarding his bonus, the Agreement says that Plaintiff is entitled to earn an "annual minimum potential bonus of US $100,000 based on completion of defined milestones." Agreement at 5; AC ¶ 9.  While the AC does not plead that Plaintiff completed "defined milestones" such that he is entitled to this bonus, Plaintiff's declaration states that he met with Gray "regularly," they agreed to certain listed milestones, and he completed those milestones. Lustig Decl. ¶ 12.  Based on this Declaration, the Court is satisfied that Plaintiff has provided evidence that Defendant breached its contract with respect to his bonus.

For his shares entitlement, Plaintiff alleges that he is entitled to the market value of one-third of four million shares.  Although the Board terminated Plaintiff for "improper behavior," Plaintiff contends that there was "no truth" to this allegation, and that it was "wholly pretextual." AC ¶ 18.  Plaintiff also alleges that at no time prior to June 12, 2018, when Lustig received the lawyer's letter terminating his employment, did AzGen inform him that the company considered any of his actions to have been improper or in bad faith.  *Id*. ¶ 17.  This is sufficient to allege that the termination should have been subject to the clause in the Agreement under which Plaintiff would be entitled to the market value of his value shares and the subscription price for the remainder shares.  Accordingly, Plaintiff has alleged sufficient facts to state a claim for breach of contract.

b. <u>Nonpayment of Wages and Waiting Time Penalties Under California Labor Code §§ 201(a), 203 (Second and Third Cause of Action)</u>

California Labor Code Section 201(a) provides that "[i]f an employer discharges an employee, the wages earned and unpaid at the time of the discharge are due and payable immediately." Cal. Lab. Code § 201(a). Where violations of Section 201(a) exist, Section 203 provides that "the wages of the employee shall continue as a penalty from the due date thereof at the same rate until paid or until an action therefor is commenced; but the wages shall not continue for more than 30 days." *Id.* § 203(a). Under California law, "once a plaintiff comes forward with evidence that he provided services for an employer, the employee has established a prima facie case that the relationship was one of employer/employee." *Narayan v. EGL, Inc.*, 616 F.3d 895, 900 (9th Cir. 2010).

Here, Plaintiff alleges that he served as the Chief Investment Officer for Defendant from August 1, 2017 through July 12, 2018. AC ¶ 12. The AC pleads that he was not paid for his salary or reimbursed for his travel expenses from April 2018 through July 12, 2018. *Id.* ¶ 13. Accordingly, Plaintiff has alleged that AzGen violated Section 201(a) and is owed waiting time penalties under California Labor Code Section 203(a).

iii. **Damages in Relation to Conduct**

Under the fourth *Eitel* factor, the Court must consider the amount of money at stake in relation to the seriousness of Defendant's conduct. *Eitel*, 782 F. 2d at 1471. Plaintiff in this case seeks compensatory and general damages, waiting time penalties under Section 203(a), prejudgment interest, as well as reasonable attorneys' fees and costs. AC, Prayer for Relief. In general, default judgment "is disfavored when a large amount of money is involved or unreasonable in light of the potential loss caused by the defendant's actions." *Omni Fin., LLC v. Glob. Petroleum, LLC*, No. 19-CV-00031-BLF, 2019 WL 5626631, at *4 (N.D. Cal. Oct. 31, 2019) (citation and quotations omitted). "However, even where the amount of money at issue is substantial, 'this factor does not significantly weigh against granting default judgment' if the amount sought 'is consistent with that to which [the p]laintiff is entitled by law.'" *Id.* (citation omitted and alterations in original).

Plaintiff here seeks unpaid wages in the amount of $70,563, waiting time penalties of

12

1   $20,833, travel expenses of $8,638.72, an annual bonus of $100,000, and $1,000,000 for the
2   stock's value.  The wages appear correctly calculated, and Plaintiff corroborates the $8,638.72
3   amount with supporting evidence.  *See* Lustig Decl., Ex. E (email from Plaintiff to Mr. Gray on
4   May 31, 2018 attaching an expense reconciliation).  Although Plaintiff did not work for an entire
5   year, based on his declaration, Plaintiff states that he completed the milestones, and is entitled to
6   the $100,000 bonus.  *Id.* ¶ 12.  For waiting time penalties, the maximum penalty is wages for 30
7   days, which is approximately $20,833 (one month of his salary).  *See* Cal. Lab. Code § 203(a).
8   The total amount for wages, travel expenses, waiting time penalty, and the bonus is approximately
9   $200,034.72.

10   Calculating the proper value of the shares is less streamlined.  Plaintiff contends that the
11   value of his AzGen stock is $1,000,000.  Mot. at 18.  Plaintiff calculates this based on the
12   Agreement, whereby the 4,000,000 shares represent approximately 10% of the issued share capital
13   of Defendant.  Agreement at 2.  Based on representations that AzGen made about its investments,
14   and based on declarations from two of AzGen's portfolio companies representing how much
15   AzGen invested in them, Plaintiff estimates a total valuation amount for AzGen of $30,000,000
16   (which counsel says is a "conservative estimate").  Mot. at 18–19; *see also* Lustig Decl. ¶ 19 , Ex.
17   F (Mr. Gray telling Plaintiff that AzGen had "$30 million 'in the bank' and could have $150
18   million 'if [they]' draw down").  10% of that is $3,000,000, and since Plaintiff contends he is
19   entitled to 1/3 of the shares at market value, Plaintiff claims he is entitled to $1,000,000 for the
20   value of his shares.  Mot. at 19.

21   The Court accepts Plaintiff's point that it is difficult to establish precise figures when
22   Defendant is not cooperative.  *See Taylor Made Golf Co. v. Carsten Sports, Ltd.*, 175 F.R.D. 658,
23   663 (S.D. Cal. 1997) ("[p]roof of actual damages or profits is not necessary, as 'it will be enough
24   if the evidence shows the extent of the damages as a matter of just and reasonable inference,
25   although the result be only approximate.'") (citation and quotations omitted).  And the Court has
26   no reason to doubt that Mr. Gray told Plaintiff that Defendant had $30 million in the bank and
27   could access up to $150 million, even if the corroborating text message is not very legible.  Lustig
28   Decl. ¶ 19 , Ex. F.  Plaintiff also states that "AzGen has claimed 'spheres of influence across the

13

globe' and a 'thriving ecosystem of patents, technologies, and companies, including a life-science company with a *$1 billion portfolio*.'"  Mot. at 19 (citing Lustig Decl. ¶ 17; Banchero Decl. ¶ 9, Ex. N) (emphasis in original).  Plaintiff supports these contentions using a number of sources in an attempt to show AzGen's substantial value.  *See id.*

However, a market equity valuation of $30,000,000 for a now dissolved and insolvent company is untethered to any inference that the Court may reasonably draw.  That valuation is not supportable given that AzGen went insolvent, dissolved, and could not even pay its own counsel.[4]  While the Court understands that Defendant did not respond to discovery seeking information about its finances or capitalization, more than a blurry text message and declarations about AzGen's potential holdings are necessary for the Court conclude that the value of an insolvent and dissolved corporation is $30 million.

    iv. **Possibility of Dispute Concerning Material Facts**

The fifth *Eitel* factor examines the "possibility of dispute as to any material facts in the case." *PepsiCo, Inc.*, 238 F. Supp. 2d at 1177.  "Upon entry of default, all well-pleaded facts in the complaint are taken as true, except those relating to damages." *Philip Morris USA*, 219 F.R.D. 494, 500 (C.D. Cal. 2003) (citing *TeleVideo Sys., Inc.*, 826 F.2d at 917–18).  However, where a plaintiff fails to adequately plead a legal claim, this factor "is either neutral or disfavors default [judgment]." *Fulton*, 2016 WL 7156440, at *5 (citing *Stuckey v. Lucas*, No. 3:11-cv-05196, 2012 WL 5948959, at *4 (N.D. Cal. Sept. 12, 2012)).  As discussed above, Plaintiff has sufficiently pled breach of contract and violations of the California Labor Code based on failure to pay the salary and reimburse travel expenses.  This factor thus weighs in favor of entry of default.

    v. **Default Due to Excusable Neglect**

The sixth *Eitel* factor considers the possibility that Defendant's default resulted from excusable neglect. *PepsiCo, Inc.*, 238 F. Supp. 2d at 1177.  Courts have found that where defendant was "properly served with the complaint, the notice of entry of default, as well as the paper in support of the [default judgment] motion," there is no evidence of excusable neglect.

---

[4] The cases cited by Plaintiff in its Motion for support are unavailing, as none involved the valuation of the equity of an insolvent and dissolved corporation.  *See* Mot. at 19-21.

*Shanghai Automation Instrument Co. v. Kuei*, 194 F. Supp. 2d 995, 1005 (N.D. Cal. 2001).

It seems that Defendant did not respond to Plaintiff's complaint because it decided not to retain new counsel (apparently because it believed, or wanted to portray, that it could not afford to do so). As there is no evidence that Defendant's failure to appear is due to excusable neglect, this factor weighs in favor of granting default judgment.

### vi. Strong Policy Favoring Decisions on the Merits

The seventh *Eitel* factor emphasizes that "[c]ases should be decided upon their merits whenever reasonably possible." *Eitel*, 782 F. 2d at 1472. While this preference does not preclude a court from granting default judgment, *see PepsiCo*, 238 F. Supp. 2d at 1177, the general rule is that "default judgments are ordinarily disfavored." *Eitel*, 782 F. 2d at 1472. Deciding the case on the merits is nearly impossible where a party refuses to participate. This factor thus weighs against, but does not preclude, entry of default judgment.

\* \* \*

In sum, the majority of the *Eitel* factors favor default judgment against Defendant.

## IV. REMEDIES

After determining that the *Eitel* factors favor the entry of default judgment, the Court must look to the relief Plaintiff is seeking. Under Federal Rule of Civil Procedure 54(c), a "default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings." Fed. R. Civ. P. 54(c).

### A. Damages

In determining damages, "a court can rely on the declarations submitted by the plaintiff." *DR JKL Ltd. v. HPC IT Education Ctr.*, 749 F. Supp. 2d 1038, 1046 (N.D. Cal. 2010). "Rule 55 does not require the court to conduct a hearing on damages, as long as it ensures that there is an evidentiary basis for the damages awarded in the default judgment." *Hernandez v. Martinez*, No. 12-CV-06133-LHK, 2014 WL 3962647, at \*9 (N.D. Cal. Aug. 13, 2014).

For breach of contract and unpaid wages pursuant to Labor Code Section 201(a), Lustig has demonstrated damages in the amount of $70,563. Under the third claim—request for a waiting time penalty under Labor Code Section 203(a)—Lustig is entitled to an additional 30

15

1   days' wages—*i.e.*, $20,833 (1/12 x $250,000, his annual salary). The Revised Contract provides
2   that AzGen "will promptly reimburse for your approved travelling expenses upon submission of a
3   proper monthly report and receipts." Lustig Decl. ¶7 & Ex. D. Labor Code Section 2802 also
4   requires an employer to reimburse an employee for business expenses. Lustig completed an
5   expense reconciliation, and sent the reconciliation to Mr. Gray on May 31, 2018—before AzGen
6   terminated his employment. *Id*. ¶14 & Ex. E. This demonstrates that Lustig spent $8,638.72 in
7   approved business expenses, which AzGen did not pay. *Id*. The Agreement also calls for an
8   annual bonus of $100,000 "based on completion of defined milestones," which, as discussed
9   above, the Court finds Plaintiff satisfied. The total amount for wages, travel expenses, waiting
10  time penalty, and the bonus is $200,034.72, and the Court finds Plaintiff is entitled to this amount.
11          Lastly, as discussed above, the Court disagrees that Lustig is entitled to $1,000,000 for the
12  value of the shares. A market equity valuation of $30,000,000 for a dissolved and insolvent
13  corporation is untethered to any reasonable inference, and more is needed to adequately estimate
14  the value of Plaintiff's shares. Because Plaintiff has not provided adequate evidence to give the
15  Court the reasonable ability to value his shares, the Court, in its discretion, declines to award any
16  amount for the shares.

17      **B.     Prejudgment Interest**

18          Plaintiff also seeks prejudgment interest under California Civil Code Section 3289. Under
19  Section 3289, a court must "award interest on all due and unpaid wages" at a rate of 10% per year.
20  Cal. Civ. Code § 3289(b). Waiting time penalties do not fall under this category. *Andrade v.*
21  *Arby's Rest. Grp., Inc.*, 225 F. Supp. 3d 1115, 1141 (N.D. Cal. 2016) (citations omitted). "'The
22  purpose of prejudgment interest is ... to make the plaintiff whole as of the date of the injury,' not
23  to punish or disincentivize an employer from wrongdoing." *Id*. (citation omitted).

24          Plaintiff calculates pre-judgment interest as of the last day of Lustig's employment, July
25  12, 2018. As of the date of the hearing on the Motion, January 9, 2020, pre-judgment interest
26  amounts for salary, expenses, waiting-time, and the annual bonus amounted to $29,923—*i.e.*,
27  interest accruing for one year and 181 days (July 12, 2018, to January 9, 2020). Interest will
28  accrue at $54.80 a day from January 6, 2020, until judgment is entered. The Court agrees that

16

Plaintiff is entitled to prejudgment interest on those amounts.[5]

### C. Attorneys' Fees and Costs

Plaintiff requests attorneys' fees in the amount of $180,625.50 and costs in the amount of $1,506.40. Labor Code Section 218.5 provides that

> (a) In any action brought for the nonpayment of wages [or] fringe benefits … the court shall award *reasonable attorney's fees and costs* to the prevailing party if any party to the action requests attorneys' fees and costs upon the initiation of the action.

(emphasis added). The statute's language is mandatory: when an employer withholds earned wages, the court "shall award" reasonable attorney's fees and costs. Plaintiff's counsel attached timesheets and invoices. Banchero Decl., Ex. Q, R. The hourly rates appear reasonable (rates of $195 per hours for a paralegal to $645 for a partner). *Id*. The Banchero Law Firm kept detailed, contemporary time records for the work its attorneys performed. *Id*. The time records are set forth chronologically, and the work is summarized and explained. The hourly rates for the firm's lawyers are reasonable, the work performed appears to have been reasonable, and the Court will grant the request for the above attorneys' fees and costs.

### V. MOTION TO SEAL

Plaintiff has also filed an administrative motion to seal ("Motion to Seal," Dkt. No. 48), which seeks to seal declarations from two non-party corporations relating to the value of AzGen's investments, as well as two sections of the Motion. Quarrio Corporation (Dkt. No. 49) and CEEK VR, Inc. (Dkt. No. 51) filed declarations in support of the Motion to Seal.

Quarrio's declaration pertains to certain details of an agreement between Quarrio and AzGen in which Quarrio agreed to issue and AzGen agreed to purchase convertible promissory notes, including highly sensitive financial information. Dkt. No. 49 ¶ 3. Quarrio's declaration also contains information regarding a venture involving Quarrio and AzGen. *Id*. The information provided in Quarrio's declaration is not available to the public and, if disclosed to the public, would inflict harm by giving Quarrio's competitors, and future prospective investors, confidential

---

[5] Because the Court declines to grant any value for the shares at this time, for the avoidance of doubt, the Court declines to enter prejudgment interest on any stock award or valuation.

business and financial information. *Id*. ¶ 4

CEEK's declaration similarly contains sensitive financial and business information of CEEK. Dkt. No. 51 ¶ 3. This information includes confidential details regarding CEEK's equity financing, shareholder equity, and future business plans. *Id*. CEEK treats this information as confidential and does not make this information available publicly during the normal course of its business. *Id*. CEEK views this information as commercially sensitive and believes that the release of this information to the public would harm CEEK's competitive standing. *Id*.

Given the sensitive and confidential nature of the information contained in Quarrio and CEEK's declarations, and the substantial likelihood of harm if that information is publicly released, the requests that these declarations are sealed satisfied the compelling reasons standard, and the Motion to Seal is **GRANTED**. *See Phillips ex rel. Estates of Byrd v. Gen. Motors Corp.*, 307 F.3d 1206, 1210–11 (9th Cir. 2002); *see also* Fed. R. Civ. P. 26(c).

## VI. CONCLUSION

For the foregoing reason, the Court **GRANTS** the Motion in part and **DENIES** it in part as follows: Plaintiff is entitled to wages, travel expenses, waiting time penalty, and the bonus in the amount of $200,034.72 plus prejudgment interest. The Court also awards $180,625.50 in attorneys' fees and costs in the amount of $1,506.40. The Court declines to award any value for the shares. The Court also **GRANTS** the Motion to Seal. Plaintiff is **DIRECTED** to submit a short proposed form judgment of no more than four (4) pages consistent with this Order by May 29, 2020.

**IT IS SO ORDERED.**

Dated: 5/21/2020

_Haywood S. Gilliam Jr._
HAYWOOD S. GILLIAM, JR.
United States District Judge